IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH GREGG LUCERO,

    Plaintiff,

v.                                                Civ. No. 14-661 WJ/GBW

FNU ESCEBETO, Officer, and
FNU MORALES, Officer,

    Defendants.

## REPORT AND RECOMMENDATIONS

This matter is before the Court on Defendants' Motion for Summary Judgment (*doc. 16*). Being fully advised, I recommend that the Court grant summary judgment in favor of the Defendants.

**I.    BACKGROUND**

Plaintiff's Complaint alleges three causes of action (1) harassment (unauthorized opening of mail) in January 2014; (2) assault on June 16, 2014; and (3) delay in receipt of a phone call to the Sheriff's Department to report the alleged June 16, 2014 assault. *See generally doc. 1*.

**II.    UNDISPUTED FACTS**

Upon order of the Court, Defendants have filed a report pursuant *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). *See docs. 13, 14*. Despite being provided an opportunity to do so, Plaintiff has filed no conflicting evidence to controvert the facts

set out in the report. Relying on the facts in the *Martinez* report, Defendants have also filed a motion for summary judgment identifying with particularity the facts upon which they rely. *See doc. 16*. Despite being provided an opportunity to do so, Plaintiff has filed no response to the motion. Consequently, he has not identified the facts proffered by Defendants which he disputes, let alone pointing to the record to support the dispute. *See* Fed. R. Civ. P. 56; *see also* D.N.M.LR-Civ. 56.1. Under these circumstances, Plaintiff has waived the right to respond or to controvert the facts asserted in the summary judgment motion. *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). Thus, I will "accept as true all material facts asserted and properly supported in the summary judgment motion." *Id*.

**A. Facts Concerning Opening of Mail in January 2014**

1. Plaintiff is an inmate at the Chaves County Adult Detention Center ("CCDC"). See Plaintiff's Complaint, filed herein.

2. On January 14, 2014, Plaintiff filed a Grievance Form alleging that on January 13, 2014, Corporal Annera Sanchez ("Cpl. Sanchez"), between 1:30 p.m. and 2:00 p.m. opened in front of him discovery from his murder case in order to ascertain whether or not it contained staples. *See doc. 14*, Ex. 1.

3. On January 16, 2014, Plaintiff filed a Grievance reporting that his girlfriend claimed that mail she received from Plaintiff had been opened and taped shut. *See id*., Ex. 2.

4. Plaintiff's contention is that "it is against the law to open the mail." *See id*.

5. On January 24, 2014, Lieutenant Easy Sanchez ("Lt. Sanchez") identified the following action taken in regard to the January 14, 2014 and January 16, 2014 grievances:

> January 14, 2014 - Mr. Lucero, I can assure you that your mail has not been tampered with, by any officer here at CCDC. We are in our legal right to open any incoming or outgoing mail. Officer Sanchez did open your legal mail in your presence as you stated. How the paper inside your packet got there, that is an issue for your attorney. I have spoken with you on how I believe they were placed there. It's your right if you want to seek legal assistance in this matter.
>
> January 16, 2014 - This issue has already been addressed.

*See id*., Exs. 1, 2.

6. Cpl. Sanchez did not read Plaintiff's legal mail, but, instead, pursuant to CCDC policy and procedure, simply opened the mail in Plaintiff's presence to search for contraband. *See id*., Ex. 3.

7. With regard to policies concerning mail, the CCDC Inmate Handbook states:

> You may send or receive mail to/from anyone, provided they are not incarcerated. You may seal your outgoing letters and give them to your Post Officer.
>
> All stamps and seals of incoming mail will be removed by the Officer before giving mail to the inmate. If you are receiving incoming social mail, it will be opened and searched for contraband. If you are receiving incoming legal mail it will be opened in your presence and searched for contraband. If contraband is found, you will not be allowed to receive or view the letter or any of its contents. Legal action may be pursued against anyone trying to introduce contraband into the facility. Inmates that have mail rejected will receive a rejection notice.

*See id.*, Ex. 4A.

   8.  The CCDC's Policy and Procedure regarding incoming inmate mail states in relevant part:

> All incoming mail will be monitored and inspected for security purposes, including for the interception of cash, money orders, physical contraband, or to uncover threats that may disrupt the orderly operation of the facility. During this process the following items will be removed from all mail, industrial staples (if removal of industrial staple will damage the article it will be returned), paper clips, metal clamps, clasps, and questionable labels. *Id.*, Ex. 4B at 2, ¶ 4(A).

> Incoming correspondence from any of the above parties [Courts, Counsel, Officials of the detention center, State and local Chief Executive Officers, Administrators of the grievance system, Protection and Advocacy, Probation and Parole] will be delivered and the detainee or inmate will sign the item was delivered unopened, the delivering Officer will then open the item in the presence of the inmate and inspect for contraband, but not read for content. *Id.* at 4, ¶ 6(B).

   9.  There is no allegation in Plaintiff's grievance form that either Defendant Escobedo or Morales had any involvement with the alleged January 14, 2014 and January 16, 2014 incidents. *See id.*, Exs. 1, 2.

   **B. Facts Surrounding Alleged Assault on June 16, 2014**

   10.  Defendant Morales describes the incident that occurred with Plaintiff on June 16, 2014, as follows:

> On June 16, 2014 at approximately 0900 hours, Lieutenant Rogers, Officer Escobedo and I Officer Morales entered South F unit to conduct visuals to make sure everything was okay. As I began conducting visuals in cell 1, I overheard inmate Lucero, Joseph (9341) on the blue Chaves County phone saying "this punk mother fucker just came in here I love you baby" as I

> conducted a visual in cell 9 I notice inmate Lucero staring at me in a very aggressive look as if he wanted to probably physically hurt a staff member, when I conducted the security check visual on cell #9 I began walking around and away from inmate Lucero and suddenly he let go of the phone and placed himself in a very aggressive stance saying "don't you fucking come up to me like that" and he position himself with his right foot back and left forward and his hands clenched into fist's, I immediately placed my right hand on inmates Lucero left wrist and with assistance of Officer Escobedo inmate was carefully placed to the wall but inmate kept on resisting and for our safety inmate was then carefully placed on the ground which he kept on resisting and would not let us place[] him with mechanical restraints, while we were struggling with inmate Lucero, I noticed inmate Trujillo, Michael (25515) standing near the South F vestibule with a dust pan on his right hand and the broom on his left hand taking a step forward so I immediately ordered him to drop the items but inmate did not comply after being ordered twice I immediately removed by Taser…from my holster and pointed directly at inmates abdominal and left thigh and ordered inmate to drop the items or force will be used, inmate finally complied and was cuff[ed] by Officer Velazco and escorted out of South F unit. Moments later Officer Herrera was able to bring us leg restraints and inmate Lucero was placed with mechanical restraints to both writs and Lieutenant Rogers placed mechanical restrains to both ankles and later was escorted to booking cell 4 for discipline and was advised of being on a 72 hour cell confinement, inmate Trujillo was advised that he will also be on 72 hour cell confinement but I would not be requesting any loss of privileges for him…

*See id.*, Ex. 5; *see also id.*, Ex. 6.

    11.  Defendant Escobedo described the incident that occurred with Plaintiff on June 16, 2014, as follows:

> On June 16, 2014 at approximately 0900 hours, Lieutenant Rogers, Officer Morales and I Officer Escobedo entered South F unit to conduct visuals. While Officer Morales made his way to cell 1 I made my way to 12 to conduct visuals in the opposition direction.  While I was conducting visuals on cell 11, I overheard inmate Lucero, Joseph (booking #13000004478) on the phone say the following "this punk mother fucker just came in her, I love you baby" and stand up from the stool on which he

> was seated on and clench his left hand into a fist.  I stood by in case inmate Lucero became a threat to staff because he had already made previous threats to Officer Morales stating that he was going to physically harm him June 4, 2014 and on June 11, 2014 behind secured doors if he had his chance.  While I stood by I noticed inmate Lucero starting at Officer Morales and when Officer Morales tried to walk around him, inmate Lucero let go of the phone, took an aggressive stance and said the following "don't you fucking come up to me like that".  At that time I feel that Officer Morales feared for his well being and took hold of inmate Luceros right wrist while I took hold of his left wrist.  Inmate Lucero became combative and uncooperative and was escorted to the ground by Officer Morales and myself.  Inmate Lucero continued to resist so I placed my knee on the back upper part of his left shoulder to gain control.  When we gained control of inmate Lucero I placed mechanical restraints on his wrists and waited for responders to arrive with leg restraints.  After being fully restrain inmate Lucero was assisted to his feet and escorted to Booking 5 where he was housed and seen by medical Roberta.

*See id.*, Ex. 5; *see also id.*, Ex. 7.

12. Lt. Nicole Rogers described the incident that occurred with Plaintiff on June 16, 2014, as follows:

> On the date and time stated in the other reports regarding this incident, myself and Officers Escobedo and Morales were conducting security checks in our maximum security unit, South Fox.  I observed inmate Joseph Lucero on the inmate phone and inmate Michael Trujillo in the dayroom of the unit.  At this time nothing was out of the ordinary so I began visually inspecting each cell beginning with 12.  As I approached cell 10, the cell closest to the inmate phone that Lucero was using, Lucero's demeanor seemed agitated at what I thought to be whoever it was he was speaking with on the phone.  Lucero's behavior had my attention but I continued on to the other cells.  I was approached by inmate Trujillo, he was asking if he could go back to North Post because he hadn't been in any trouble since his fight, I told him I would look into it but to stay out of trouble until then.  Shortly after, I heard Lucero get loud and appeared to be in an aggressive stance towards Officer Morales, I observed inmate Trujillo to have a broom and a dust pain in his hand and he began to approach Officer Morales, Officer Escobedo and inmate Lucero as if to

>help Lucero.  I ordered Trujillo to back in the vestibule doors and called a Code 1 (officer needs assistance).  I called for South Fox door to be secured with the intentions of having Trujillo locked in the vestibule so we could secure Lucero safely; however my radio transmission was interrupted by other radio traffic resulting in Trujillo still in the day room with a broom and dust pain.  I secured inmate Lucero's legs to prevent him from resisting any further and ordered him to stop resisting while ordering Trujillo to get back in to the vestibule and calling control to secure the door.  During the struggle, Lucero kept telling us that his wrist had been injured before and we needed to be careful to which I responded, "stop resisting and fighting us."  Lucero kept resisting.  Inmate Lucero was placed in leg restraints, hand cuffs and safely removed from the unit and placed into Booking 4.  Lucero kept resisting, then complaining of his wrist, then he would yell out that we were hurting him, I kept ordering Lucero to relax.  Approximately five to ten minutes later Dee with medical approached Lucero to assess any injuries; Lucero was verbally abusive and still agitated.  I advised medical that Lucero still posed a threat to the safety and security of the facility and as soon as he calms down we can assess any possible injury.  Shortly after, Lucero received medical attention.

*See id.*, Ex. 5; *see also id.*, Ex. 8.

13. As a result of the incident, Defendant Morales requested sanctions against Plaintiff.  *See id.*, Ex. 5; *see also id.*, Ex. 9A.

14. CCDC has promulgated policies and procedures concerning inmate discipline which were in effect in June, 2014.  These procedures were followed.  *See id.*, Exs. 4C, 4D.

15. The video and audio recordings of the alleged incident corroborate the officers' accounts.  *See id.*, Ex. 4E.

16. On June 16, 2014, Plaintiff went to medical alleging that he twisted his wrist, but no observable injuries were noted.  *See id.*, Ex. 10.

7

17. On June 25, 2014, Lt. Easy Sanchez conducted a disciplinary hearing with Plaintiff, and found Mr. Lucero guilty of refusing to obey a direct order of a staff member, abusive language towards staff members, and conduct which disrupts or interferes with the security or orderly running of the CCDC. *See id.*, Exs. 9A, 11, 12.

18. Under CCDC's Inmate Policy, an inmate may appeal the decision of the hearing officers by submitting a written report to the Administrator or designee within (5) working days of the hearing officers written report of the incident. *See id.*, Ex. 4C.

19. Mr. Lucero did not timely appeal the Committee's Sanctions/ Recommendations. *See id.*, Exs. 9, 12.

20. Mr. Lucero's disciplinary conviction and resulting sanctions concerning the June 16, 2014 incident have not been overturned or invalidated. *See id.*

21. On July 1, 2014, Plaintiff filed a grievance alleging that he was assaulted by Officer Morales and Escobedo claiming that "they grab[bed] me while I was on the phone, slam[med] me two [sic] the ground, while on the ground officer : [E]scebeto jump[ed] on the back of my head slamming in into the ground 'for no reason.'" *See id.*, Ex. 13.

22. On July 7, 2014, Chief of Security Major David Garcia provided the following response to Plaintiff's grievance: "I have reviewed the video and it does not show the incident in the manner [as] you describe it... I also need to remind you that when

8

incidents like this occur[,] things will go a lot smoother and easier if you follow the verbal directives given by staff members." *See id.*, Ex. 13.

23. Plaintiff's July 1, 2014 description of the June 16, 2014 event does not comport with either the video or audio evidence. *See id.*, Ex. 4E.

24. Mr. Lucero violated CCDC'S Policies and Procedures (refused to obey a direct order of a staff member, used abusive language towards staff members, and engaged in conduct which disrupted or interfered with the security or orderly running of the CCDC), and the use of physical force was in accordance with CCDC's policies on the use of physical force. *See id.*, Exs. 4C, 4D, 4E, 6, 7, 8.

**C. Facts Concerning Alleged Delay in Receipt of Call to Sheriff's Department**

25. Within forty-eight (48) hours of the June 16, 2014 incident, Plaintiff was given a free phone call to contact the sheriff's department to report an alleged assault by Defendants. *See id.*, Ex. 12.

26. On July 1, 2014, Plaintiff filed a grievance alleging that he had asked several times to talk to the sheriff's department to file an assault claim. *See id.*, Ex. 13.

27. On July 7, 2014, Chief of Security Major David Garcia provided the following response to Plaintiff's grievance: "You have been given a phone call to contact the sheriff's department." *See id.*

28. There is no allegation that any of the named Defendants delayed Plaintiff's use of the phone to contact the Sherriff's Department. *See id.*

9

**III.   STANDARD OF REVIEW**

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] 'that there is an absence of evidence to support the nonmoving party's case.'" *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324.

The court's role is not to weigh the evidence or determine credibility, but rather merely to assess whether a genuine issue exists as to material facts requiring a trial. *See Anderson*, 477 U.S. at 249, 255.  "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257.  Furthermore, the court must resolve reasonable inferences and doubts in favor of the non-moving party, and construe evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 551-54 (1999).  However, "viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be merely colorable or anything short of significantly probative." *Hall v.*

10

*Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991) (internal quotations omitted); *see also Anaya v. CBS Broad. Inc.*, 626 F. Supp. 2d 1158, 1197 (D.N.M. 2009) ("The mere existence of a scintilla of evidence will not avoid summary judgment.").

### IV.     HARASSMENT IN VIOLATION OF CIVIL RIGHTS

Plaintiff's harassment claims stem from the allegation that Corporal Sanchez "illegally" opened his mail, in violation of his constitutional rights.  This claim has no merit against the named Defendants.  First, there is no allegation that either named Defendant, Officer Escobedo or Morales, "illegally" opened or tampered with his mail.  Second, Plaintiff's claims should be dismissed because it is well established that "prison officials may open an inmate's incoming legal mail to search for contraband in the presence of the inmate."  *See Brown v. Williams*, 36 Fed. App'x 361, 363 (10th Cir. 2002) (citing *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974)).  Thus, I recommend the Court grant summary judgment in favor of the Defendants on Plaintiff's claim of harassment.

### V.     ASSAULT IN VIOLATION OF CIVIL RIGHTS

Plaintiff's assault claim stems from the allegation that on or about June 16, 2014, he was "assaulted" without provocation, presumably in violation of the Eighth Amendment.  "The use of excessive force by jail officials violates a prisoner's rights under the Eighth Amendment's Cruel and Unusual Punishments Clause when the prisoner is subjected to an 'unnecessary and wanton infliction of pain.'"  *Miller v. Glanz*, 948 F.2d 1562, 1566 (10th Cir. 1991).  "The 'core judicial inquiry is…whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Cooper v. Ellsworth Correctional Work Facility*, 817 F.Supp. 84, 86 (D. Kan. 1993), citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). "De minimis uses of physical force are excluded from the cruel and unusual punishment inquiry unless 'repugnant to the conscience of mankind.'" *Rhoten v. Werholtz*, 243 Fed. App'x 364, 366 (10th Cir. 2007) (citing *Hudson*, 503 U.S. at 9-10) (affirming district court's dismissal of inmate's civil rights case where plaintiff alleged that while conducting a pat down search, correctional officer "slammed [him] against the wall[,] squeezed [his] nipples real[ly] hard [,] squeezed [his] buttocks, and pulled on [his] testicles real[ly] hard " and stating that the use of force did not state an Eighth Amendment violation as the use of force was *de minimis*); *see also Norton v. The City of Marietta*, 432 F.3d 1145, 1156 (10th Cir.2005) (grabbing and twisting of inmate's neck was not sufficiently objectively harmful enough to establish an Eighth Amendment excessive force claim).

In this case, a disciplinary hearing was held regarding the June 16, 2014 incident, and Mr. Lucero was found guilty on the Class II offenses of refusing to obey a direct order of a staff member, abusive language towards staff members, and conduct which disrupts or interferes with the security or orderly running of the CCDC. *See doc. 14* Exs. 9A, 11, 12. Plaintiff may not bring a §1983 claim challenging the findings of this disciplinary hearing unless he first demonstrates that his disciplinary conviction was previously invalidated. *Edwards v. Balisok*, 520 U.S. 641, 643 (1997). Otherwise, a

judgment in Plaintiff's favor "'would necessarily imply the invalidity of the disciplinary hearing and the resulting sanctions.'"  *Id*. at 644.  As Plaintiff cannot show that the disciplinary conviction was invalidated, Plaintiff cannot contend that he was not guilty of refusing to obey a direct order of a staff member, abusive language towards staff members, and conduct which disrupts or interferes with the security or orderly running of the CCDC.  Further, the statements of Defendants and Lt. Rogers, Plaintiff's medical records, and the video and audio evidence, establish that the use of force was not only justified for the offenses alleged and seen and heard on the video and audio, but also was *de minimus* and was not done "maliciously and sadistically to cause harm."  Accordingly, I recommend that the Court grant summary judgment in favor of the Defendants on Plaintiff's claims of assault.

## VI.   DENIAL OF RIGHT TO REPORT ALLEGED ASSAULT TO SHERIFF'S DEPARTMENT

Plaintiff alleges that Lt. Sanchez (not a named Defendant) delayed providing him a phone call to report the alleged June 16, 2014, incident to the Sheriff's Department.  There is no allegation that either Defendant Morales or Escobedo had any involvement in the alleged delay to receive a phone call.  Thus, I recommend the Court grant Defendants' summary judgment motion on Plaintiff's allegation that an alleged delay in providing a phone call violated his constitutional rights.

## VII.   CONCLUSION

Plaintiff's claims fail because his allegations, even if accepted as true, do not support a finding of a constitutional violation and therefore do not overcome qualified immunity.  In addition, Count VI is barred by the PLRA's exhaustion requirement, and Plaintiff does not have standing to bring Counts VII and VIII on behalf of other inmates. Therefore, I recommend granting Defendant's Motion for Summary Judgment (*doc. 31*).

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**